A94A0523. HACKWORTH v. BOARD OF EDUCATION FOR THE CITY OF ATLANTA et al.
(447 SE2d 78)

Smith, Judge.

This appeal involves the applicability of OCGA § 50-18-70 et seq., commonly known as the Georgia Open Records Act (the Act), to certain records maintained by Laidlaw Transit, Inc., a private corporation.

The record reveals that CB Hackworth, a producer at an Atlanta television station, submitted a request to the Board of Education for the City of Atlanta (the Board) to inspect the personnel records of certain named drivers or former drivers transporting pupils in the Atlanta city school system to and from public schools in buses owned by the school system. In response to Hackworth's request, the Board released the few documents in its possession, claiming it had complied completely with Hackworth's request and did not have access to the personnel files. It informed Hackworth that the drivers were employees of Laidlaw Transit, Inc. and the records were in the exclusive possession and control of Laidlaw, with whom the Board had contracted to maintain the buses and to furnish drivers to operate them. Laidlaw refused to release the files, claiming it was a private entity to which the Act did not apply. After expanding his request to encompass the

personnel records of all bus drivers who drove city school buses, Hackworth filed this action against the Board and Laidlaw. Cross-motions for summary judgment were filed by all parties, and the trial court granted the motions of the defendants and denied that of Hackworth. The trial court did not disclose the basis for its rulings. We must, therefore, determine whether they were correct for any reason.

1. "Where there is a request for disclosure of documents under the Public Records Act, the first inquiry is whether the records are 'public records.'" *Napper v. Ga. Television Co.*, 257 Ga. 156, 160 (a) (356 SE2d 640) (1987). OCGA § 50-18-70 (a) defines "public records" as those records "prepared and maintained or received in the course of the operation of a public office or agency." In 1992, this Code section was amended to include as "public records" "such items received or maintained by a private person or entity on behalf of a public office or agency which are not otherwise subject to protection from disclosure." Ga. L. 1992, p. 1061, § 5.

We must decide initially whether the records sought by Hackworth were either "prepared and maintained or received in the course of the operation of" the school system or were "received or maintained by [Laidlaw] on behalf of" the school system.[1] Hackworth contends that a fair reading of the statute mandates their inclusion in both categories.

(a) In *Macon Telegraph Pub. Co. v. Bd. of Regents*, 256 Ga. 443 (350 SE2d 23) (1986), a newspaper made a request under the Act to the Board of Regents of the University System of Georgia for certain financial documents relating to the Athletic Association. The Board refused, claiming that the Athletic Association was a private corporation and therefore the documents were not "public records" within the meaning of the Act. It was undisputed that the operation of the athletic program at the University of Georgia is "a legitimate function" of the University and its responsibility, and there was uncontradicted testimony that the Athletic Association is the management tool used by the university to carry out this function and responsibility. Id. at 444. Consequently, and "because the maintenance of documents relating to [the financial affairs] of the intercollegiate sports program is an integral part thereof," the Supreme Court held that "regardless of whether the documents are prepared by employees of a private Athletic Association or by [university officials who are also employees of the association], it is clear that they are 'documents, papers, and

---

[1] It is undisputed that the Atlanta city school system is a "public . . . agency" within the contemplation of this Code section. OCGA § 50-18-70 (a) provides that the word "agency" carries the definition in OCGA § 50-14-1 (a) (1). Subparagraph (B) of OCGA § 50-14-1 (a) (1) defines "agency" as including "[e]very county, municipal corporation, school district, or other political subdivision of this state."

records prepared and maintained in the course of the operation of a public office' and are therefore 'public records' under the Open Records Act." Id. at 445.

Hackworth argues that the facts here are analogous. The transportation of pupils is similarly a "legitimate function" and responsibility of this Board, and Laidlaw is a similar "management tool" used by the Board, a public agency, to carry out its public responsibilities. Because in carrying out this responsibility drivers must be hired, evaluated, and managed, personnel records must be kept and are in like fashion an "integral part" of the Board's public responsibility. Therefore, notwithstanding the Board's delegation of its responsibility for transporting students to Laidlaw, the records are "public records" within the meaning of the Act.

We agree. We find these facts indistinguishable in any important way from those in *Macon Telegraph*. Contrary to appellees' argument, we do not find controlling the fact that local school systems and boards of education are not *mandated* by law to provide transportation for their students to and from school. See OCGA § 20-2-1071. It is undisputed that the Board has both the power and the authority to undertake such transportation. The transportation of students to and from school by bus makes public education accessible to them and is part of the "operation" of the school system. *Roberts v. Baker*, 57 Ga. App. 733 (196 SE 104) (1938). Without question, then, operating school buses, or arranging for their operation, is "a legitimate function" of the Board and therefore within the "operation" of a public agency. Certainly, if the Board had chosen not to contract with Laidlaw to perform this function but instead operated the buses itself,[2] no question would exist that the public would be entitled to inspect the records pertaining to this operation.

Neither do we find applicable the federal decisions cited by appellees holding that for the purpose of determining whether a private entity is a "state actor" within the meaning of 42 USC § 1983, the test is whether the activity performed by the actor has traditionally been the *exclusive* prerogative of the state.[3] The focus in § 1983 actions is on the character of the *actor*, in order to determine liability. Because of the statutory definition, our focus in cases under the Act is necessarily not on the actor but on the particular, discrete *function* performed by that actor. We must determine whether that function is a public one, rendering the records generated in the course of its per-

---

[2] Indeed, at the hearing on the motions for summary judgment, the Board's counsel indicated the Board has terminated its contract with Laidlaw and is itself operating the buses at the present time.

[3] *Rendell-Baker v. Kohn*, 457 U. S. 830, 842 (102 SC 2764, 73 LE2d 418) (1982); *Black v. Indiana Area School Dist.*, 985 F2d 707, 710 (3rd Cir. 1993).

formance subject to the Act.

No doubt exists that Laidlaw is a private entity rather than an arm of the Board; indeed, it transports other passengers under other contracts. Hackworth does not seek to examine all of Laidlaw's records, and no question exists that he could not do so. When we concentrate upon the records generated by Laidlaw in the course of carrying out a function delegated to it by a public agency — the transportation of Atlanta public school system pupils — it is apparent that the issue of whether those documents are "public records" is governed by the operations in which the documents were generated.

The issue here is controlled by the decisions in *Macon Telegraph*, supra, and other previously decided cases. See *Cremins v. Atlanta Journal &c.*, 261 Ga. 496 (405 SE2d 675) (1991) (outside consultant contracts of university athletic coaches arise out of their public activities and records pertaining thereto are "public records"); *Dooley v. Davidson*, 260 Ga. 577, 580 (4) (397 SE2d 922) (1990) (regulations promulgated by Board of Regents regulate outside income of university athletic coaches; therefore documents regarding such contracts are "public records" even though maintained by private persons). The documents in issue, although generated and maintained by Laidlaw, a private entity, are an integral part of the course of the operation of a public agency and are therefore "public records."

(b) We also agree with Hackworth that the fact that the records in issue were created and in the control of Laidlaw has no bearing on whether they were "public records" because of the recent amendment to OCGA § 50-18-70 (a). These records were "received or maintained by a private person or entity on behalf of a public office or agency." Were we to permit the Board to avoid opening these records to the public merely by delegating certain of its public functions — and the documents thereby generated — to a private entity, that amendment would be meaningless.

Appellees protest that the Board had no access to or interest in documents pertaining to the drivers beyond the minimal records required by the contract to be delivered by Laidlaw to the Board and that access to those records was not necessary for the transportation program to be carried out. This assertion is unsupported by the terms of the contract between the Board and Laidlaw. The contract does specify that the only documents Laidlaw must provide the Board concerning bus drivers are those showing that the drivers are licensed, met all applicable legal requirements, passed drug screening tests, and were fingerprint-screened for criminal records.

It also specifies, however, that the Board has the right "to approve the employment of all drivers employed under this Contract" and to "direct Laidlaw to remove any employee for any cause deemed by the Board to constitute just cause and designate specific drivers

for specific routes." Further, it provides that "all buses shall be operated by qualified, experienced, licensed operators *of good moral character, subject to Board approval.*" (Emphasis supplied.) In order for the Board to enforce effectively these contractual provisions to which Laidlaw agreed, it necessarily would have to obtain access to drivers' personnel records beyond the minimal reports required under the contract. Therefore, to the extent necessary under the contract to enable the Board to carry out its public duty to provide safe transportation to its students, Laidlaw was required to maintain the records "on behalf of" the Board, rendering them "public records."

The finding that the documents sought are "public records" also supports the public policy of this state, which the legislature has expressed clearly in adopting the Open Records Act. Its "purpose is not only to encourage public access to such information [regarding the operation and responsibilities of public agencies] in order that the public can evaluate the expenditure of public funds and the efficient and proper functioning of its institutions, but also to foster confidence in government through openness to the public." *Athens Observer v. Anderson,* 245 Ga. 63, 66 (263 SE2d 128) (1980). The public has a legitimate interest in the operation of student transportation, and in the drivers who carry out that public function. If access to the documents sought from Laidlaw is denied, the purpose of the Open Records Act would be frustrated.

2. Having determined that the records sought are "public records," we must decide whether they may be exempted from disclosure by OCGA § 50-18-72 (a), which provides that public disclosure is not required for certain types of documents. Although the federal Freedom of Information Act exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 USC § 552 (b) (6), OCGA § 50-18-72 (a) (2) exempts only "[m]edical or veterinary records and similar files, the disclosure of which would be an invasion of personal privacy." "[T]here is no requirement under OCGA § 50-18-72 that a report generated by or used by [a public agency under state law] be exempted from disclosure merely because that report would be kept confidential if generated or used by the federal government for federal purposes." *Ga. Hosp. Assn. v. Ledbetter,* 260 Ga. 477, 479 (3) (396 SE2d 488) (1990).

Even assuming the documents are "public records" and therefore subject to the Act, they may be exempt from disclosure under state law if they are "similar" to medical and veterinary records, as contended by Laidlaw. They contain much personal information regarding the drivers' private affairs, such as medical information, tax information, credit histories, etc., about which the public has no legitimate concern and the disclosure of which would be an invasion of both

Laidlaw's and the employees' privacy.

We have found no Georgia cases deciding the issue of whether personnel records in general are exempt from disclosure under OCGA § 50-18-72 (a) (2) because they are "similar" to medical records. Compare *Irvin v. Macon Telegraph Pub. Co.*, 253 Ga. 43, 44-45 (2) (316 SE2d 449) (1984) and *Athens Observer*, supra at 64-65 (2) (declining to address this issue because the records in issue were not personnel records). However, given that the legislature was aware of the language of the federal statute and yet chose to omit personnel records from the Georgia exemption, and applying the venerable construction maxim expressio unius est, exclusio alterius, we conclude it was not the intent of the legislature to create a "blanket" exclusion for personnel records. See generally *Travelers Ins. Co. v. McNabb*, 201 Ga. App. 297, 299 (410 SE2d 788) (1991), disapproved on other grounds *Yoho v. Ringier of America*, 263 Ga. 338, 342, n. 1 (434 SE2d 57) (1993).

Nevertheless, Georgia courts have held that " '[p]roperly construed, the section forbids disclosure to the general public from (public) records or files of *any* information which would invade the constitutional, statutory or common law rights of . . . privacy. [Cit.]' [Cit.]" *Napper*, supra, 257 Ga. at 160 (c). Various factors must be considered in determining whether matters are exempt from disclosure because they invade privacy rights: "While this state has a strong policy of open government, there is a corresponding policy for protecting the right of the individual to personal privacy. References to matters about which the public has, in fact and in law, no legitimate concern, though found in a public document are not subject to disclosure under the Public Records Act because they are not the subject of 'legitimate public inquiry.' " *Harris v. Cox Enterprises*, 256 Ga. 299, 302 (1) (348 SE2d 448) (1986).

The public has a strong and legitimate interest in this case in certain portions of the bus drivers' records maintained by Laidlaw, since they affect the safety of the children transported to and from Atlanta public schools. The drivers' and Laidlaw's privacy rights cannot outweigh this public interest in the disclosure of information regarding the drivers' job performance, disciplinary actions, accidents on the job, and the like. Id. at 301-302 (1). Certain other portions, however, may be exempt from disclosure under the Act, either because they are medical records or because they contain information the disclosure of which would constitute the tort of invasion of privacy. See generally *Dortch v. Atlanta Journal &c.*, 261 Ga. 350, 351-352 (2) (405 SE2d 43) (1991).

Determination of whether portions of the records in issue must be withheld because they fall in this category and, if so, which portions, must be made by the trial court. We therefore remand this case

to the trial court for in camera inspection of the records and determination of this question. Only those portions found by the trial court not to meet the test in *Dortch* must be disclosed.

*Judgment reversed and remanded. Pope, C. J., and McMurray, P. J., concur.*

DECIDED JUNE 29, 1994 —
RECONSIDERATION DENIED JULY 15, 1994

*Powell, Goldstein, Frazer & Murphy, James C. Rawls, Joseph D. Wargo*, for appellant.

*Smith, Howard & Ajax, Julie J. Weatherly, England, Weaver & Kytle, George M. Weaver*, for appellees.