A98A1654. MILES v. KEMP.
(506 SE2d 141)

BLACKBURN, Judge.

The Georgia Department of Public Safety (DPS) appeals the trial court's ruling that the habitual violator revocation of Rene D. Kemp, Jr.'s driver's license should be measured from the date it had been previously suspended under Georgia's Implied Consent Law, as both resulted from the same March 3, 1995 arrest. We reverse the trial court's ruling.

On March 3, 1995, Kemp was charged with driving under the influence (DUI). Kemp's driver's license was seized, and he received a DPS Official Notice of Intent to Suspend License (Form 1205). Kemp's license was automatically suspended on April 3, 1995, when he failed to request a hearing in response to the Form 1205. See OCGA § 40-5-67.1 (g) (1). On October 24, 1996, Kemp was convicted on the charge of DUI. Kemp was served with a Habitual Violator Revocation Notice (DPS Form 1189), because this was his third DUI offense within five years, and his license was revoked for a period of

five years. He had a prior conviction for DUI in 1991, and he had forfeited bond on another DUI charge in 1993.

On October 28, 1996, Kemp requested a credit against the revocation period for the period April 3, 1995 through October 28, 1996, when his license had been suspended, but not revoked. Kemp appealed DPS's denial of his request to the Superior Court of Fulton County, which granted Kemp relief and modified the administrative hearing Final Order accordingly. DPS's appeal to this Court by Commissioner Miles followed the trial court's ruling.

OCGA § 40-5-67.2 (b) provides, in part: "An administrative license suspension pursuant to Code Section 40-5-67.1 shall be *counted toward fulfillment of any period of suspension* subsequently imposed as a result of a *conviction of violating Code Section 40-6-391* [DUI statute] which arises out of the same violation for which the administrative license suspension was imposed. An administrative license suspension pursuant to Code Section 40-5-67.1 shall *run concurrently with any revocation* of such driver's license pursuant to a subsequent determination that such person is a *habitual violator*." (Emphasis supplied.)

"Where a statute is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it, but must construe it according to its terms." (Punctuation omitted.) *Garrard v. Hicks*, 266 Ga. 181, 182 (465 SE2d 665) (1996). The plain language of the statute makes it clear that the legislature intended to give credit for implied consent suspensions *only* against subsequent suspensions under the DUI statute, where both were imposed as a result of the same arrest.

It is equally clear that the legislature chose to have implied consent suspensions simply run concurrently with any habitual violator revocation of such driver's license, without credit. Otherwise, there would be no reason to have a different provision for each circumstance.

Given the legislature's specific description of when credit for implied consent suspensions will be given, the term concurrent in this context can only relate to time. Under the statute, no implied consent suspension can be credited against a subsequent habitual violator revocation. Therefore, under these facts, the term concurrent simply means that the suspension and the revocation time periods each began on the date of its imposition, and that each will end on its prescribed date, unaffected by the existence or termination of the other.

The legislature permits credit for implied consent suspensions where there is a subsequent DUI suspension, but only where both suspensions arise from the same arrest. Contrary to the trial court's ruling, the habitual violator revocation did not result from the same

violation as did the implied consent suspension, but rather resulted from the accumulation of three separate DUI convictions within a period of five years. See *Wilson v. Miles*, 218 Ga. App. 806 (463 SE2d 381) (1995). This is the reason that the legislature did not include comparable "same violation" language in the subsequent habitual violator revocation sentence that it included in the subsequent DUI suspension sentence preceding it. Revocation is the action the legislature takes against a driver based on his cumulative driving record for the protection of the public. The administrative license suspension procedure does not violate the double jeopardy provisions of the United States and Georgia Constitutions, because it is a remedial statute and it is not a punishment or prosecution. See *Nolen v. State*, 218 Ga. App. 819 (463 SE2d 504) (1995).

The fallacy of Kemp's argument is obvious. If Kemp were entitled to credit against his habitual violator revocation for his last conviction, then he would logically be entitled to credit for any suspensions that may have been imposed in the prior two relevant DUIs, as they equally contributed to his status and revocation. The legislature could reasonably conclude that those drivers who are convicted of DUI three or more times in a five-year period are more dangerous than those who do not do so. The legislature would then be authorized to revoke the driving privileges of such drivers for a definite period of time, without credit for any prior, independent license suspension. See *Gaines v. State*, 260 Ga. 267 (392 SE2d 524) (1990). As such prior convictions did not arise out of the same violation as the implied consent suspension, no credit would be due in any event.

The trial court erroneously concluded that both the implied consent suspension and the habitual violator revocation resulted from the same offense, and therefore, in order to preserve the remedial purpose of the administrative license suspension and the constitutionality of such procedure, the term "suspension" in the first sentence of OCGA § 40-5-67.2 (b) must be interpreted under the facts of this case to allow Kemp credit against his habitual violator revocation. The legislature has specifically defined the terms "suspension" and "revocation" in OCGA § 40-5-1 "where the language of an Act is plain and unequivocal, judicial construction is not only unnecessary but is forbidden." *City of Jesup v. Bennett*, 226 Ga. 606, 609 (176 SE2d 81) (1970).

For the above reasons, the trial court erred in overruling the Hearing Officer and in modifying the Final Decision of the Administrative Hearing.

*Judgment reversed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED AUGUST 12, 1998.

Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Carol A. Callaway, Senior Assistant Attorney General, Christopher S. Brasher, Assistant Attorney General, for appellant.

Rene D. Kemp, Jr., pro se.